IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

**FILED**

OCT 1 5 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ALICEVILLE CHIP MILLS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NUMBER |
| ) | |
| RULE INDUSTRIES, INC., ) | 95-C-0842-W |
| ) | |
| Defendant. ) | |

**ENTERED**

OCT 1 5 1998

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.   FINDINGS OF FACT

1.   In this admiralty case, 28 U.S.C. § 1333, the
plaintiff Aliceville Chip Mills, Inc. ("Aliceville Chip") claims
that the defendant Rule Industries, Inc., ("Rule Industries")
defectively designed and manufactured its Model 1800 bilge pump;
that the alleged defective pump caused the plaintiff's tugboat to
sink; and that as a result, the plaintiff suffered damages.

2.   The M/V ACADIAN is an all steel welded double deck
triple screw diesel powered 650 horsepower river-type towboat with
a raised pilothouse.  It was built in 1948 and has approximate hull
dimensions of 60 feet by 20 feet by 4 feet 3 inches.

3. The M/V ACADIAN was purchased by Aliceville Chip for $55,000 several years ago, and since that time, Aliceville Chip has spent roughly $50,000 in repairing, upgrading, and transporting the vessel to Aliceville, Alabama.

4. The M/V ACADIAN was inspected by marine surveyor Chuck Pennington of Merrill Marine Service, Inc., in April 1992 and again on September 14, 1993. On the latter survey, Pennington found no leaks in the hull compartments of the vessel with the exception of dripping in way of the stern tube packing glands.

5. On or about January 5, 1993, Aliceville Chip purchased from W. W. Grainger two sump pumps designed and manufactured by Rule Industries. One of these ("the first Rule pump") was properly installed on the M/V ACADIAN.

6. During the early morning hours of January 15, 1993, the M/V ARCADIAN sank in shallow water while moored at a chute off the Tennessee Tombigbee Waterway.

7. The ingress of water into the electrical housing of the first Rule pump caused it to cease working, and thus, the vessel to sink. If the pump had operated properly, it would have expelled the water which had entered the M/V ACADIAN's center shaft

2

packing gland before the vessel sank.  The pump housing of the Rule
pump was defective in its water-tightness integrity.  The defect
arose from the design of the electrical housing.  The design
incorporated an oval O ring to a flat unsecured surface, which
tolerated the penetration of water by the O ring seal and the
subsequent ingress of water into the electrical components of the
pump.

8.  At all material times prior to the sinking of the M/V
ACADIAN, the first Rule pump was plugged into a live electrical
circuit.

9.  As submersible pumps, the Rule pumps should have been
designed/manufactured with water-tight compartments for their
electrical components.

10.  In September of 1993 when a representative of Rule
Industries disassembled and examined the first pump, he found
evidence that water and/or moisture had entered the housing of the
pump which contained the electrical components.

1.  After the M/V ACADIAN was raised, the second Rule
pump was installed to complete the stripping of the water from the
vessel.  The second Rule pump operated only for a short time before

3

it became inoperable, due to water entering the housing pump with its electrical components.

12.   If the first Rule pump had functioned, ACADIAN would not have sunk.

13.   This action was filed on July 19, 1995.

14.   The defendant has not been prejudiced by any delay in the filing of this action.   In the interim between this maritime tort and the filing of the action, the parties engaged in settlement negotiations.   Therefore, any delay in the filing of the action was reasonable under the circumstances.

15.   The defendant was given timely notice of the claim in this case, and a completely reasonable opportunity to investigate the claim within a reasonable time.

16.   To the extent that lack of privity is at issue in this case,[1] the defendant has waived the defense by its December 8, 1998, letter to the plaintiff's counsel.   In that letter, defendant's counsel urged the defendant to dismiss former defendant W. W. Grainger from this action:

---

[1] The court is of the opinion that since lack of privity is not set forth as a defense in the Pretrial Order's statement of the defendant's position, it is not an issue in the case.

4

With regard to insurance, W. W. Grainger is covered by a Vendor's Endorsement to Rule Industries' policy, and you already have that policy information.  I believe Grainger has other coverage in excess of the Rule Industries' policy, but I do not believe that is of any significance, since the policy limits for the Rule Industries' policy greatly exceed the damages that you are claiming in this lawsuit.  If I am missing something and you feel that you are entitled to additional information, please feel free to give me a call.

Responding to your letter brings to mind a question I was meaning to pose anyway.  My understanding is that the bilge pump in question was sold to your client in a sealed package without any change in its condition by the distributor, W. W. Grainger.  While you may contend there are manufacturing or design defects in the bilge pump, I do not see how those impose liability on W. W. Grainger, and even if it did, I do not see why you would want to pursue W. W. Grainger when they are afforded the identical coverage that Rule Industries has and Rule Industries has ample coverage for the claimed damages.  If it is not too much trouble I wish that you and Mr. Walker would reflect upon this for a moment and consider dismissing W. W. Grainger as a Defendant so that we can begin to simplify the issues in this case.

Please let me know where we stand on that as soon as possible, because if you do not agree to dismiss W. W. Grainger I will need to file a Motion for Summary Judgment.

Grainger was subsequently dismissed as a party to this action.[2]
For purposes of this case, therefore, Grainger was the agent of
Rule Industries.

      17.  The plaintiff was not contributorily negligent.

      18.  At the time of its sinking, the M/V ACADIAN had a
fair market value of $85,000.  It cost the plaintiff $32,500 to
raise the vessel; and another $8,252.88 to survey her.  The vessel
was a total loss.  The boat (i.e., its salvage) was exchanged for
its towage and storage costs.  The plaintiff has suffered damages
of $125,752.88.  The plaintiff is entitled to prejudgment interest
at a rate of 7%, from February 15, 1993, to the present.  Thus,
compensatory damages and prejudgment interest total $188,114.70.


### B.   CONCLUSIONS OF LAW

      1.  The court has jurisdiction of this maritime tort
action under 28 U.S.C. § 1333.

      2.  The plaintiff has proven by a preponderance of the
evidence that (a) the Rule sump pump installed on the M/V ACADIAN
was defective, (b) the defendant Rule Industries designed,

---

[2] This trier of fact does not subscribe to the "got cha" school of law practice.

manufactured, and distributed (through its agent W. W. Grainger) the sump pump, (c) the sump pump was in normal use when the vessel sank, (d) the defective sump pump caused the vessel to sink, and (e) the sump pump was defective when it left the control of Rule Industries and its agent.

    3.   This action was filed within the three-year statute of limitations for maritime torts.  46 U.S.C. App. § 763(a); <u>Mink v. Genmar Indus., Inc</u>., 29 F.3d 1543, 1547 (11th Cir. 1994).

    4.   The doctrines of laches does not bar this action.

    5.   The plaintiff is entitled to a reasonable market value of the vessel and reasonable costs of raising and surveying the vessel.  <u>Ruggo Constr. Co. v. New England Found. Co</u>., 172 F.2d 964 (1st Cir. 1949).

    6.   The plaintiff is entitled to prejudgment interest.

    7.   Based on the foregoing, the appropriate judgment shall issue.

DONE this _14th_ day of October, 1998.

UNITED STATES DISTRICT JUDGE
U. W. CLEMON

7